IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00908-MSK-MEH

SATTAR KHDIR,

      Plaintiff/Petitioner,

v.

ALBERTO GONZALES, Attorney General,
MICHAEL CHERTOFF, Secretary, Department of Homeland Security,
EMILIO GONZALEZ, Director, U.S. Citizenship and Immigration Services,
MARY MISCHKE, Acting District Director, Denver District Office, U.S. Citizenship
and Immigration Services, and
ROBERT MUELLER III, Director, Federal Bureau of Investigation,

      Defendants/Respondents.
_____

**OPINION AND ORDER GRANTING, IN PART, PETITION FOR HEARING
ON NATURALIZATION APPLICATION**
_____

      **THIS MATTER** comes before the Court pursuant to the Petitioner's Petition **(# 1)** seeking a hearing on his Application for Naturalization, and on supplemental briefing by the parties as directed by the Court **(# 18-21)**. Also pending is the Respondents' Motion to Dismiss **(# 9)**, the Petitioner's response **(# 11)**, and the Respondents' reply **(# 12)**.

      The facts of this case are not in dispute. The Petitioner is an Iraqi national, and a lawful permanent resident of the United States. On June 3, 2004, he applied for naturalization as a U.S. citizen. On July 21, 2005, U.S. Citizenship and Immigration Services ("USCIS") conducted its interview of the Petitioner, even though the Petitioner's FBI background check remained pending. Although the Petitioner's interview was apparently satisfactory to USCIS, the agency has refused

1

to process the Petitioner's application until the FBI background check is completed. At present, the FBI's background check for the Petitioner remains incomplete.

The Petitioner commenced this action on May 2, 2007, seeking relief pursuant to 8 U.S.C. § 1447(b). At a hearing to address the course of proceedings in this matter, counsel agreed that more than 120 days had passed since the Petitioner's interview with USCIS,[1] and that the Court had authority under 8 U.S.C. § 1447(b) to remand the matter back to USCIS for a prompt decision on the Petitioner's application. However, the parties also agreed that, because the FBI's name check had yet to be completed, a remand that required the USCIS to adjudicate the Petitioner's application before the FBI check was complete would likely result in the USCIS denying the Petitioner's application. The Petitioner argued that the Court had the authority to not only compel an adjudication by USCIS, but also had the power to compel the FBI to complete the name check within a certain period of time. The Respondents denied that the Court had such authority. The Court directed the parties to file supplemental briefs addressing the Court's authority to compel the FBI to promptly complete the Petitioner's background check.

The issue presently before the Court is whether the Court has the authority, whether derived from 8 U.S.C. § 1447(b) or from some other source, to compel the FBI to complete background checks on an immigration applicant within a certain period of time. The Petitioner's

---

[1] The Respondents initially moved to dismiss **(# 9)** the action, contending that the Petitioner's examination was not complete for purposes of 8 U.S.C. § 1447(b) until the FBI completed its background check. The chief case relied upon by the Respondents for this proposition, *Walji v. Gonzales*, 489 F.3d 738 (5th Cir. 2007), has since been withdrawn from publication by the 5th Circuit, and upon rehearing, the 5th Circuit joined the nearly unanimous authority holding to the contrary. *Walji v. Gonzales*, ___ F.3d ___, 2007 WL 2685208 (5th Cir. Sept. 14, 2007) (rehearing), *and cases cited therein*. It is not clear whether the Respondents continue to press the arguments contained in their Motion to Dismiss, but, to the extent they do, that motion is denied for the reasons stated by the 5th Circuit upon rehearing in *Walji*.

2

supplemental brief **(# 18)** contends that the Court has two sources of authority to issue such an order: (i) pursuant to 8 U.S.C. § 1447(b); and (ii) pursuant to the All Writs Act, 28 U.S.C. § 1651.  In response to arguments raised by the Respondents **(# 19)**, the Petitioner's supplemental response brief **(# 21)** further contends that the Administrative Procedures Act ("APA"), 5 U.S.C. §702, and the Mandamus statute, 28 U.S.C. § 1361, also provide authority for the Court to direct the FBI to complete the name check.[2]

Before examining each purported source of authority, it is helpful to review the general process by which naturalization applications are considered by USCIS.  The applicant commences the process by filing an application for naturalization.  8 C.F.R. § 334.2(a).  USCIS then commences an investigation of the applicant, including various background checks.  8 C.F.R. § 335.1.  Among those background checks is a check of the applicant's criminal record, if any, conducted by the FBI.[3]  8 C.F.R. § 335.2(b).  Once the various background checks are complete,

---

[2]The Court is mindful of the general rule prohibiting parties from raising new issues in reply briefs.  *See generally Hill v. Kemp*, 478 F.3d 1236, 1250-51 (10th Cir. 2007).  Because the briefing schedule set by the Court did not contemplate any further briefing after the parties' simultaneous responsive briefs, the Petitioner's response brief is the equivalent of a reply.  Ordinarily, then, the Court would disregard the Petitioner's suggestion, raised for the first time in reply, that the APA and Mandamus statutes warrant the relief requested.  Nevertheless, in the interest of expediting the resolution of this case and many others that concern similar delay by the FBI, the Court will proceed to consider the Petitioner's newly-raised arguments.  To the extent the Respondents believe that the Court's analysis overlooks compelling arguments or caselaw, the Court will entertain an appropriate motion to reconsider.

[3]Docket # 9-2 is an affidavit by Dana Lindauer, an Adjudications Officer with USCIS, that describes the particular steps taken by the FBI in conducting the criminal background check.  In general, the FBI consults its own records for matches to the applicant's fingerprints; conducts a "name check" of the applicant against a database known as "IBIS," maintained by the Department of Homeland Security; and conducts a similar "name check" of the applicant against the FBI's own investigative databases.  If any of these investigations reveals negative information concerning the applicant, the FBI attempts to obtain further clarification of that information from other sources.

USCIS conducts an "examination" of the applicant, in the form of a formal interview with a designated USCIS official. 8 C.F.R. § 335.2(a). The regulations make clear that the examination will be conducted "only after [USCIS] has received a definitive response from the [FBI] that a full criminal background check of an applicant has been completed," 8 C.F.R. § 335.2(b) (emphasis added), although that procedure was not followed in this case. At the conclusion of the examination, USCIS is required to either grant or deny the application within 120 days. 8 C.F.R. § 335.3(a).

### 8 U.S.C. § 1447(b)

8 U.S.C. § 1447(b) provides that:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

The phrase "determination under section 1446" refers to 8 U.S.C. § 1446(d), which provides that "The employee [of the Service] designated to conduct any such examination shall make a determination as to whether the application should be granted or denied." *See also* 8 U.S.C. § 1446(a) (referring to "an employee of the Service" conducting the examination). The "Service" referred to in these statutes is defined as the Immigration and Naturalization Service, 8 U.S.C. § 1101(a)(34), but in 2002, Congress abolished the Immigration and Naturalization Service and reassigned its duties with regard to naturalization applications to USCIS. 6 U.S.C. § 271(b). The requirements of § 1446 and 1447 thus require the USCIS to make a prompt determination on a

naturalization application; the statute does not purport to regulate the conduct of the FBI, nor does it expressly confer authority on this Court to direct the FBI to complete a background check within a certain period of time.

The Petitioner raises several arguments that § 1447(b) implicitly authorizes the Court to compel prompt action by the FBI. First, he contends that because the statute authorizes the Court to assume responsibility for adjudicating a naturalization application once the 120-day period has passed, Congress implicitly conferred upon the Court the power to compel the various Executive Branch agencies to complete the various tasks that must occur before an application can be decided. In support of this argument, he cites to *Omeiri v. Dist. Dir., Bureau of Citizenship and Immig. Servs.*, 2007 WL 2121998 (E.D. Mich. 2007) (unpublished), and *Aman v. Gonzales*, 2007 WL 2694820 (D. Colo. 2007) (unpublished).

Both of these cases involve a factual scenario that is effectively identical to that presented here. However, the Court finds *Omeiri* to be inapposite. There, the court did not purport to consider whether it had the power to compel prompt action by the FBI; indeed, the *Omeiri* court described the issue it was considering as "whether 'the examination' in § 1447(b) means the date Defendant conducted its initial interview of Plaintiff or when Defendant has completed all steps necessary to make a decision on Plaintiff's application, including receiving a definitive response from the FBI on Plaintiff's background check." 2007 WL 2121998 at * 2.

*Aman*, on the other hand, squarely addresses the issue of whether § 1447(b) authorizes the Court to compel the FBI to complete its background check within a particular period of time. 2007 WL 2694820 at *5. In *Aman*, Judge Nottingham found that "[a]lthough section 1447(b) does not directly reference the FBI, it makes no sense to read the statute to state that the court

cannot directly instruct the FBI to do what the court could indirectly require the FBI to do through 'appropriate instructions' to the USCIS." *Id.* Put differently, *Aman* explains that "even if this court lacks the authority to instruct the FBI to complete Plaintiff's name check by a date certain, this court can still set a deadline by which the USCIS must finish processing Plaintiff's application." *Id.* It goes on to observe that "[w]hether the court instructs the FBI directly or instructs it indirectly through an order to the USCIS is a question of form, not substance. To hold otherwise would be to gut the court's discretion under section 1447(b)." *Id.*

      Although this Court shares many of the frustrations evinced in *Aman* with regard to the FBI's inexplicable delays in processing background checks, it respectfully disagrees with the reasoning in the opinion. This Court believes that *Aman*'s reasoning suffers from a fallacy in its initial premise. Although it is reasonable to assume that § 1447(b) confers on the Court all of the powers that USCIS has in adjudicating an application, nothing supports *Aman*'s initial premise that USCIS can directly or indirectly compel the FBI to complete the background check. To the contrary, the fact that Petitioner's application remains unadjudicated years after USCIS has completed its assessment is testament to the <u>inability</u> of USCIS to direct or compel FBI action. Were it otherwise, the Court is confident that USCIS would exercise such power in order to prevent backlogs and to avoid having to defend itself in lawsuits such as this. Although the FBI may cooperate with USCIS after USCIS is ordered to make a decision, *Aman* offers no legal authority, and this Court has found none, for the proposition that it is compelled to do so. Indeed, counsel here agree that merely instructing the USCIS to adjudicate the Petitioner's application would be fruitless, because the incomplete background check would likely compel USCIS to deny Petitioner's application.

This Court also observes that *Aman*'s resolution of the issue is contrary to the majority of courts that have considered it.[4] *See e.g. Elsayed v. Gonzalez,* 2007 WL 2792453 (D. Colo. Sept. 25, 2007) ("almost every court to have considered the issue of jurisdiction to compel the FBI to perform a name check has found a lack of the same"), *citing Liu v. Chertoff,* 2007 WL 2435157 (D.Or. Aug. 29, 2007); *Konchitsky v. Chertoff,* 2007 WL 2070325 (N.D.Cal. July 13, 2007); *Eldeeb v. Chertoff,* 2007 WL 2209231 (M.D. Fla. July 30, 2007); *Antonishin v. Keisler*, 2007 WL 2788841 (N.D. Ill. Sept. 20, 2007) ("Section 1447(b), standing alone, does not authorize us to order the FBI to expedite plaintiff's name checks"). The Petitioner has not cited, and the Court's own research has not located, any decision that sets forth a persuasive explanation as to how §1447(b) authorizes the Court to compel action by the FBI. Accordingly, the Court finds that the express language of §1447(b) does not authorize this Court to compel the FBI to expedite its background checks.

The Petitioner next argues that if the express language of § 1447(b) does not expressly grant appropriate authority, it should be interpreted as doing so based upon its legislative history. Indisputably, § 1447(b) reflects a Congressional intent to streamline what was a slow and cumbersome process of adjudicating naturalization petitions. *See e.g.* H.R. Rep. 102-287, *reprinted in* 1991 U.S.C.C.A.N. 1362, 1363-64. However, the legislative history gives no indication that Congress specifically considered the FBI's role in the adjudication process, much

---

[4]The Court acknowledges that some courts have remanded cases such as these with instructions that the FBI complete its background checks within a certain period of time. *See e.g. Al-Farisi v. Mueller*, 492 F.Supp.2d 335, 338 (S.D.N.Y. 2007) *and cases cited therein*. However, in those cases, the court never specifically addressed the issue of where its authority to compel the FBI originates. Absent some identification of the issue and explanation of reasoning, this Court cannot assume that those courts silently considered the issue and concluded that such authority existed.

less crafted § 1447(b) with an intention that courts would compel action by the FBI. Although the Petitioner's approach might more closely approximate Congress' intent, it is not for this Court to reconstruct statutes when their express operation proves ineffective at carrying out their purpose.[5]

Finally, the Petitioner argues that requirement of an FBI background check is "extra-statutory," and thus, that USCIS cannot hold out the pendency of such a check as an excuse to avoid adjudicating his application. This may or may not be correct, but it does not address the question of whether the Court has the authority to compel action by the FBI. Indeed, if anything, the logical extension of the Petitioner's argument that the FBI has no statutory authority to conduct a background check is that the Court similarly lacks the statutory authority to compel the FBI to do so in a timely manner. In any event, the FBI background check is required by 8 C.F.R. § 335.2(b); Congress specifically delegated the rulemaking power to the USCIS to establish how naturalization applications would be processed. 8 U.S.C. § 1443(a). USCIS' decision to require

---

[5]Interestingly, the Petitioner finds himself in the current situation as the beneficiary of USCIS' violation of its own regulations. 8 C.F.R. § 335.2(b) requires that USCIS conduct its interview of an applicant "only after" the FBI check of the applicant has been completed. Under the normal operation of the regulations, the Petitioner would not yet have been interviewed, and the 120-period Congress created in § 1447(b) would not yet have begun to run. As a result, it is difficult to interpret the statutory scheme (at least insofar as Congress' intent is sought to be furthered by USCIS' regulations interpreting that scheme) as providing for authority to compel action by the FBI. Under the regulatory scheme, there should never be a situation where an applicant's rights to an immediate adjudication under § 1447(b) arise before the FBI has completed its work.

Although the Court cannot criticize the Petitioner for accepting the benefit of a premature interview by USCIS, such a mistake by USCIS should not be used by the Petitioner as a tool to crack open the regulatory scheme even further and create a remedy that is contemplated neither by statute or regulation.

8

background checks appears to fall clearly within the scope of the power delegated to USCIS by statute.

Accordingly, the Court finds that nothing in § 1447(b) permits the Court to compel the FBI to expedite its processing of the Petitioner's background check.

**All Writs Act**

The Petitioner alternatively argues that relief against the FBI can be imposed pursuant to the All Writs Act, 28 U.S.C. § 1651. That statute provides that the Court "may issue all writs necessary or appropriate in aid of [its] jurisdiction[ ]." The Act is a "residual source of authority" which can be invoked in order to issue orders necessary in order to preserve the Court's jurisdiction over a cognizable claim, but it is not an independent source of jurisdiction nor does it create substantive rights or powers. *See Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). Any writ sought under the Act must be one that is necessary to preserve the Court's existing jurisdiction or orders. *Covanta Onondaga Ltd. v. Onondaga County Resource Recovery Agency*, 318 F.3d 392, 296 (2d Cir. 2003). The Act does not authorize the Court to fashion an ad-hoc remedy simply because compliance with statutory provisions appears inconvenient or less appropriate. *Pennsylvania*, 474 U.S. at 43.

Here, the Court's jurisdiction and authority is specified in 8 U.S.C. §1447(b) - to compel USCIS to adjudicate an application for naturalization. The All Writs Act permits the Court to issue writs that may be necessary to protect or effectuate its jurisdiction and authority to direct USCIS in accordance with that statute, but does not expand the Court's authority to include orders directed to the FBI. Put simply, it is not necessary to order the FBI to do anything in order

to vindicate the Petitioner's right under § 1447(b) to obtain an adjudication of his application by USCIS.

In support of his argument, the Petitioner observes that an adjudication made without the FBI's complete investigation might result in the denial of Petitioner's application - an outcome that the Petitioner does not desire. This may be true, and if so, gets to the core of the problem. The Petitioner may find himself in a "Catch-22", having to either compel the USCIS to render an adjudication which ultimately results in the denial of his application because his background check remains incomplete, or to surrender his right under § 1447(b) and wait until the FBI completes its work. However, the mere existence of this curious situation does not warrant relief under the All Writs Act. Section 1447(b) entitles the Petitioner to an adjudication of his application by USCIS, not a particular outcome. A denial of his application on the grounds that the FBI is unable to verify the Petitioner's background is one way in which USCIS can discharge its statutory obligation. The Petitioner's argument that invocation of the All Writs Act to compel FBI action is not an argument that no meaningful adjudication can be made without action by the FBI, but merely a recognition that, without such action, the likelihood of an adjudication favorable to the Petitioner is lessened. In essence, the Petitioner seeks precisely the sort of ad-hoc, extra-jurisdictional remedy that the Supreme Court makes clear is not an appropriate use of the All Writs Act.

**Administrative Procedure Act**

The Petitioner argues that the FBI's failure to complete his background check amounts to agency action "unreasonably delayed," entitling him to relief under the APA. The APA, 5 U.S.C. § 702, provides that "a person . . . adversely affected by agency action . . . is entitled to judicial

review thereof." Pursuant to 5 U.S.C. §702(1), the Court has the authority to "compel agency action unlawfully withheld or unreasonably delayed."

The majority of District Courts that have considered whether the APA permits the Court to compel the FBI to promptly complete a background check have concluded that it does not. For example, in *Omar v. Mueller*, 501 F.Supp.2d 636, 640 (D.N.J. 2007), the court concluded that there was no authority compelling the FBI to complete a name check "within a certain specified time period," and thus concluded that completion of such a check was not an agency duty that the FBI was "required" to take at any particular time, thereby falling outside of the APA. 501 F.Supp.2d at 640, *citing Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004). In *Li v. Chertoff*, 482 F.Supp.2d 1172, 1178 (S.D. Cal. 2007), the court reached a similar result. There, the court explained that "a court only has jurisdiction to compel an agency to act within a certain time period under the APA when the agency is compelled by law to act within a certain time period." *Id.*, *citing Norton*, 542 U.S. at 65. Finding no statute or regulation requiring the FBI to complete a name check within any specific time frame, the court found that the APA would not permit relief. *Id.*; *see generally Azadegan v. Chertoff,* 2007 WL 2822783 (E.D. Mich. Sept. 27, 2006) (unpublished) ("Even the courts that have found APA jurisdiction over the USCIS in these instances have recognized that the FBI did not owe the plaintiffs a 'clear, non-discretionary' duty to process the security checks"), *citing Konchitsky, supra.*; *Antonishin v. Keisler*, 2007 WL 2788841 (N.D. Ill. Sept. 20, 2007) ("We conclude that plaintiffs have not stated a claim for APA relief against the FBI"); *Yan v. Mueller,* 2007 WL 1521732 (S.D. Tx. May 24, 2007); *Shalabi v. Gonzalez,* 2006 WL 3032413 (E.D. Mo. Oct. 23, 2006); *see also Abanov v. Gonzales,* 2007 WL 2872765 (S.D. Tex. 2007) (unpublished) (finding background checks to be

part of discretionary adjudication of application, and thus, beyond APA). A minority of District Courts have found precisely the opposite. For example, in *Kaplan v. Chertoff*, 481 F.Supp.2d 370, 400-01 (E.D. Pa. 2007), the court found, "by implication" in a combination of statutes, that Congress "imposed on the FBI a mandatory duty to complete the background checks." It went on to reason that "[s]ince the FBI has a mandatory duty to act, the APA requires that the FBI complete the criminal background checks in a reasonable amount of time." *Id.*.

In general, this Court agrees with the reasoning in *Omar* and *Li*, at least with regard to the "unlawfully denied" aspect of the APA. *Norton* makes clear that the APA can only be used to compel an agency to comply with laws or regulations that require it to act in a certain way– *i.e.*, if regulations required the FBI to process aliens' background checks within a specified time period, the Court could use the APA to compel the FBI to act promptly once that time period had been shown to have elapsed. 542 U.S. at 65 ("when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be"). The Petitioner has not pointed the Court to any law or regulation that limits the amount of time the FBI has to conduct a background check. Thus, it appears that the time for completing a background check is left to the FBI's discretion, and, as such, it is beyond the ordinary reach of the APA.

However, the Court agrees with *Kaplan* that the FBI is obligated to conduct a background check if requested by USCIS, and thus, is subject to the APA's "general but nondiscretionary duty . . . to pass upon a matter presented to it 'within a reasonable time.'" *See e.g. Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099-1100 (D.C. Cir. 2003). This duty exists exist independently of whether the agency is legally required to take

action within a specified period of time. *See e.g.* 5 U.S.C. § 706(1) (authorizing court to compel agency action that is either "unlawfully withheld <u>or</u> unreasonably delayed") (emphasis added); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999) ("if an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions-such as the APA's general admonition that agencies conclude matters presented to them 'within a reasonable time,' a court must compel only action that is delayed unreasonably. Conversely, when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act").

The Petitioner raised the applicability of the APA for the first time in reply, and therefore Respondents have not had the opportunity to be heard in response. The omnibus defense raised by the Respondents in response to other purported sources of authority cited by the Petitioner – *i.e.* that the statutes do not waive the Government's sovereign immunity – would be misplaced with regard to an APA claim that does not seek monetary damages. 5 U.S.C. § 702. Moreover, the Court understands the Respondents to concede that the FBI's duty to complete a background check requested by USCIS is non-discretionary, even if the time within which it does so is left to the FBI's discretion. *C.f. San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 885-86 (9th Cir. 2002) ("for a claim of unreasonable delay to survive, the agency must have a statutory duty [to perform the requested action] in the first place"). Indeed, the Respondents cite P.L. 105-110, a 1998 appropriations statute that purports to thereafter bar USCIS from adjudicating any naturalization application <u>until</u> the FBI completes a background check on the applicant. *See* 111 Stat. 2440, 2448. Logically, if USCIS is prevented from acting on an application until the FBI

completes a background check, the FBI must be under some legal duty to complete a requested background check, even if there is no set time within which the FBI must do so. Because the FBI has a legal obligation to complete a background check at some point in time, it appears that the APA could supply the Court with authority to compel action by the FBI to promptly complete a background check that had been unreasonably delayed.

Where, as here, there is no set deadline for an agency to complete a legally-required action, the APA provides a requirement that it do so within a reasonable time. *Forest Guardians*, 174 F.3d at 1190. Thus, it is left to the Court to determine whether the FBI's delay in adjudicating the Petitioner's application has become unreasonable. *Id.* Determining whether an agency has unreasonably delayed ruling on a matter, however, is a "complicated and nuanced task requiring consideration of the particular facts and circumstances." *Mashpee*, 336 F.3d at 1100. Among the factors that the Court should consider with regard to the reasonableness of the delay are: (i) any statutory timetable for the action or other Congressional indication of the speed at which the agency is intended to proceed; (ii) the nature and extent of the interests prejudiced by delay; and (iii) the effect that compelling prompt action would have on agency activities of equal or higher priority. *Id.* These questions are highly fact-intensive, and require development of an adequate factual record.

Apparently, the parties did not anticipate the need for a factual record on the issue of the reasonableness of the FBI's delay. Without such a record, the Court cannot appropriately resolve the issue. Accordingly, the Court will conduct a brief, non-evidentiary hearing at **10:00 a.m.** on **Tuesday, December 4, 2007**, for the purpose of addressing when and how evidence will be presented. To the extent either side believes it needs to engage in discovery, that party's counsel

shall confer in advance with opposing counsel, and both counsel shall be prepared to address any disagreement between the parties as to the timing, nature, or extent of such discovery.

### Mandamus

Finally, the Petitioner contends that the Mandamus statute, 28 U.S.C. § 1361, permits the Court to compel action by the FBI. A similar argument has been raised and rejected in many of the cases cited above. To be entitled to relief in the form of mandamus, the Petitioner must show: (i) a clear right to the relief sought; (ii) a clear duty by the respondent to do the act requested; and (iii) the lack of any other adequate remedy. Although the Petitioner may be able to establish the third element, for the various reasons discussed above, he fails to establish the first two. *Yan, supra* at *6 *and cases cited therein*.

### Remedy

Although it is undisputed that the Respondents have violated 8 U.S.C. § 1447(b), insofar as more than 120 days have passed since his interview was completed, the Court shall not fix a remedy for that violation at this time. As the parties acknowledged at oral argument, a remedy directed solely at USCIS will be insufficient to secure a meaningful adjudication of the Petitioner's application so long as the FBI background checks remain incomplete. Accordingly, the Court will defer directing a remedy on the Petitioner's claim under § 1447(b) against USCIS until the Court determines whether the FBI's delay in completing the Petitioner's background check has become unreasonable under the APA.

**IT IS THEREFORE ORDERED** that the extent the Respondents continue to press their Motion to Dismiss **(# 9)**, that motion is **DENIED**. The Petitioner's Petition for Hearing on Naturalization Application **(# 1)** is **GRANTED IN PART**, insofar as the Court finds that USCIS

has violated 8 U.S.C. § 1447(b), and ruling is **RESERVED IN PART**, pending the December 4, 2007 hearing set forth herein and the parties' presentation of a factual record with regard to the reasonableness of the FBI's delay in concluding the Petitioner's background check.

Dated this 6th day of November, 2007

                                         **BY THE COURT:**

                                         *Marcia S. Krieger*
                                         _____

                                         Marcia S. Krieger
                                         United States District Judge